

# In the Missouri Court of Appeals
## Eastern District

### <u>DIVISION ONE</u>

| | | |
|---|---|---|
| TODD J. WIND and TODD J. WIND ENTERPRISES, LLC., | ) | No. ED109818 |
| | ) | |
| Respondents, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | Cause No. 20SL-CC03107 |
| | ) | |
| MARK A. MCCLURE, | ) | Honorable Kristine A. Kerr |
| | ) | |
| | ) | |
| Appellant. | ) | Filed: April 26, 2022 |

### Introduction

Mark McClure appeals from the circuit court's denial of his motion to compel arbitration in a breach of contract action filed by Todd J. Wind and Todd J. Wind Enterprises, LLC. Because the parties' Asset Purchase Agreement failed to include the notice of arbitration statement required by § 435.460, their agreement to arbitrate is unenforceable and the circuit court's judgment is affirmed.

### Factual Background and Procedural History

In May of 2018, Todd J. Wind and Todd J. Wind Enterprises, LLC (collectively "Wind") executed an Asset Purchase Agreement with Mark McClure to purchase McClure's dental practice. As part of the sale, the parties agreed that McClure would continue practicing dentistry as an employee of Wind for two years. They also agreed that McClure would not practice dentistry

within ten miles of Wind's practice or solicit any of Wind's patients for a period of two years. The parties memorialized the employment agreement in a Provider Agreement and the restrictions on McClure's practice in a Restrictive Covenant Agreement. Both of those agreements were made exhibits to, and expressly incorporated into, the Asset Purchase Agreement.

Following the sale, the relationship soured and Wind sued McClure for what Wind perceived as violations of the Asset Purchase Agreement. In the lawsuit, Wind alleged that McClure improperly terminated his relationship with Wind before the end of his two-year term in violation of the Provider Agreement. Wind also alleged that McClure began soliciting Wind's patients to another dental practice within ten miles of Wind in violation of the Restrictive Covenant Agreement. Wind also sued McClure's new dental practice, alleging claims of tortious interference with contract and tortious interference with a business expectancy.

In response to the lawsuit, McClure filed a motion to compel arbitration and a motion to dismiss. McClure argued that the circuit court should compel arbitration because the Asset Purchase Agreement contained a binding arbitration clause, which stated in relevant part:

> MEDIATION AND ARBITRATION: It is the intention of the parties to bring all disputes between them to an early, efficient and final resolution. Therefore, it is hereby agreed that all disputes, claims and controversies between the parties hereto, whether individual, joint in class, in nature, or otherwise, shall be exclusively resolved as provided herein through mediation and arbitration.
>
> A. Any dispute between the parties as it relates to the terms of this Asset Purchase Agreement or the behavior or practice of the parties as their rights or privileges may be affected in the future, shall be submitted to mediation, in accordance with the rules of the American Arbitration Association or other such professional dispute resolution body mutually acceptable to the parties.
>
> B. Any dispute not otherwise satisfactorily resolved through mediation within thirty (30) days from the commencement thereof may be submitted at the request of either party, to binding arbitration pursuant to the rules of the American Arbitration Association (or such professional dispute resolution body mutually acceptable to the parties) through an arbitrator in Missouri that has been selected by the rules of the AAA.

2

McClure argued that Wind's claims fell squarely within the arbitration provision.

Wind opposed McClure's motion to compel arbitration, arguing that the Asset Purchase Agreement does not govern the dispute. Instead, Wind directed the court to paragraph five of the Restrictive Covenant Agreement, which states:

> SPECIFIC PERFORMANCE: Any breach of the warranties, covenants or provisions contained herein shall be subject to specific performance by temporary as well as permanent injunction or other equitable remedies by a court of competent jurisdiction. The obtaining of any such injunction or other equitable relief shall not prevent the obtaining party from also seeking and obtaining any damages incurred as a result of such breach or any other remedy available at law, either prior to or after obtaining such injunction. If any court of competent jurisdiction (or arbitrator) determines that Covenantor has breached any of the foregoing covenants, then Covenantors shall pay all reasonable costs of enforcement of the foregoing covenants including, but not limited to, court costs and reasonable attorneys' fees, including such costs and fees through any appeals.

Wind argued that the breach of contract claim arose from the restrictive covenant, which does not contain an independent arbitration provision. Rather, the restrictive covenant specifically allows for a claim to be resolved by "a court of competent jurisdiction."

Wind also argued that the arbitration clause is invalid and unenforceable for two reasons. First, the inconsistent use of the terms "shall" and "may" conflict, resulting in an ambiguity regarding whether the parties intended to submit their disputes to mandatory arbitration. Second, the Asset Purchase Agreement failed to include the mandatory notice language required by § 435.460 of the Missouri Uniform Arbitration Act. Wind argued that the failure to include the mandatory language rendered the arbitration provision unenforceable.

The circuit court heard arguments on McClure's motions and entered an order denying both the motion to compel arbitration and the motion to dismiss. McClure sought immediate appeal under § 435.440, which permits an appeal from the denial of an application to compel arbitration made under § 435.355. *Sanford v. CenturyTel of Mo., LLC*, 490 S.W.3d 717, 718 (Mo. banc 2016).

3

**Standard of Review**

This Court reviews whether a motion to compel arbitration should have been granted *de novo*. *Ingram v. Chateau*, 586 S.W.3d 772, 774 (Mo. banc 2019).

**Analysis**

In his sole Point Relied On, McClure argues that the circuit court erred in denying the motion to compel arbitration for two reasons.[1] First, McClure argues that the arbitration provision unambiguously required arbitration of Wind's claims. Second, McClure argues that the parties' failure to comply with § 435.460 should be excused because the parties had actual knowledge of the arbitration provision. Because we hold that the parties' failure to include the notice language required by § 435.460 renders the arbitration agreement unenforceable, this Court need not consider whether the arbitration provision is ambiguous.

McClure sought to compel arbitration under § 435.355.1, which permits the court to compel arbitration upon a showing that an enforceable agreement to arbitrate exists between the parties and that the opposing party refuses to arbitrate. To compel arbitration, the circuit court was required to determine that a valid arbitration agreement existed and that the dispute fell within its

---

[1] Appellant's Point Relied On does not comply with Missouri's Rules of Appellate Procedure. Rule 84.04 states that Points Relied On must: (1) identify the circuit court action the appellant challenges; (2) state the legal basis for the claim of error; and (3) explain why the legal reasons in the context of the case amount to reversible error. Rule 84.04(d)(1) also provides a template to be used to ensure that all three requirements are met. Appellant's sole Point states, "[t]he trial court erred as a matter of law in denying the appellant's motion to compel arbitration; the restrictive covenant is subject to the arbitration clause and both parties had actual notice of it." It then contains two sub-Points Relied On, one asserting that the claims under the Restrictive Agreement are subject to the arbitration clause and the other asserting that Wind was charged with actual knowledge of the arbitration clause. This Point Relied On does not substantially follow the form required by Rule 84.04(d)(1), and it makes two allegations of circuit court error. "Multifarious points relied on are noncompliant with Rule 84.04(d) and preserve nothing for review." *Macke v. Patton*, 591 S.W.3d 865, 869 (Mo. banc 2019) (quoting *Bowers v. Bowers*, 543 S.W.3d 608, 615 n.9 (Mo. banc 2018)). Consolidating multiple points of error into a single point is not permitted. A Point Relied On that fails to substantially comply with Rule 84.04 is grounds for dismissal of the appeal. *Burgan v. Newman*, 618 S.W.3d 712, 714 (Mo. App. E.D. 2021). Though Appellant's brief does not comply with the letter of the rule, our Court prefers "to decide an appeal on the merits where disposition is not hampered by rule violations and the argument is readily understandable." *Bennett v. Taylor*, 615 S.W.3d 96, 98 (Mo. App. E.D. 2020). McClure's briefing deficiencies do not prohibit this Court from understanding McClure's arguments, and they do not require this Court to assume an advocacy role. As a result, we have exercised our discretion to review the brief *ex gratia*. *Macke*, 591 S.W.3d at 870 (Mo. banc 2019). Counsel is strongly encouraged to comply with the Rules in all future appellate proceedings.

4

scope. *Ellis v. JF Enters., LLC*, 482 S.W.3d 417, 419 (Mo. banc 2016). This Court applies the "usual rules of state contract law and canons of contract interpretation" in making such determinations. *Netco, Inc. v. Dunn*, 194 S.W.3d 353, 358 (Mo. banc 2006).

Wind argues that the arbitration provision is unenforceable because the Asset Purchase Agreement does not include the mandatory notice language required by § 435.460. That statute requires each contract containing a binding arbitration provision to "include adjacent to, or above, the space provided for signatures a statement, in ten point capital letters, which read[s] substantially as follows: 'THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.'" Section 435.460. The language of the statute is clear and unambiguous. The requirement is absolute, and all contracts containing an arbitration provision must include the prescribed notice statement. The statute does not authorize any exceptions.

This Court has held that, if an arbitration agreement subject to § 435.460 does not contain the mandatory notice statement, then it will not be enforced. *Hefele v. Catanzaro*, 727 S.W.2d 475, 477 (Mo. App. E.D. 1987). The parties here agree that § 435.460 is applicable to their contract and they failed to comply with its provisions. As a result, following the plain language of the statute and this Court's decision in *Hefele*, the arbitration provision contained within the Asset Purchase Agreement is unenforceable.

McClure argues, however, that this Court should apply a judicially created exception to the unambiguous statutory requirements of § 435.460. In support of his argument, McClure relies on a short line of cases suggesting that noncompliance with § 435.460 may be excused if the evidence shows the parties had "actual notice" of the arbitration provision. *See Forest Hills Country Club v. Fred Weber, Inc.*, 691 S.W.2d 361 (Mo. App. E.D. 1985).

This line of cases begins with *State ex rel. Tri-City Construction Company v. Marsh*, 668 S.W.2d 148 (Mo. App. W.D. 1984). In *Tri-City*, a subcontractor sued several parties over money allegedly owed to the subcontractor on a construction contract. *Id.* at 150. While that litigation was pending, the parties entered into an agreement to submit their claims to binding arbitration in exchange for dismissal of their actions with prejudice. *Id.* The parties entered into arbitration proceedings, and the subcontractor obtained an award. *Id.* When the subcontractor filed a petition to confirm the arbitration award, Tri-City argued that the arbitration agreement was unenforceable because it did not contain the notice language required by § 435.460. *Id.* at 152-53.

This Court rejected Tri-City's argument, holding that § 435.460 did not apply to the parties' stand-alone arbitration agreement. *Id.* at 153. This Court noted that, § 435.460 "is written in terms of a contract *containing* an arbitration provision." *Id.* (emphasis added). The purpose of § 435.460 is to notify the parties that an arbitration provision exists *within* their contractual agreement. *Id*. But when the agreement under analysis is a stand-alone agreement to arbitrate, requiring the notice statement would be "illogical and obviously not intended by the legislature" and "would serve no rational purpose." *Id.* Because the contract at issue was itself an independent agreement to arbitrate a dispute known to the parties, § 435.460's requirement did not apply. *Id.*

This Court expanded the limited holding of *Tri-City* beyond the context of a stand-alone arbitration agreement in *Forest Hills Country Club v. Fred Weber, Inc.*, 691 S.W.2d 361 (Mo. App. E.D. 1985). In *Forest Hills*, this Court assessed the enforceability of an arbitration clause within a contract for renovation and construction work that did not include the notice statement required by § 435.460. *Id.* at 362. The circuit court granted Forest Hills's motion for stay of the arbitration proceedings because the parties' contract failed to comply with § 435.460. *Id.* The appellant argued that compliance with § 435.460 was not necessary because both parties drafted

6

the contract, meaning they had actual notice that the arbitration provision existed, thereby satisfying the purpose behind the statute. *Id.* at 363. This Court agreed. *Id.*

Ostensibly building on *Tri-City, Forest Hills* held that actual notice of an arbitration provision satisfied the purpose of § 435.460 and remanded for a factual determination regarding whether the parties had actual notice of the provision. *Id.* In so holding, this Court stated that the rationale for the decision in *Tri-City* was that the parties to a stand-alone arbitration agreement "obviously have actual notice of the arbitration clause, thereby satisfying the purpose of the statute." *Id.* at 363. This interpretation, however, is incorrect. *Tri-City* did not excuse compliance because the parties had actual notice. Instead, it held that the legislature did not intend for § 435.460 to apply to stand-alone arbitration agreements because the statute applied only to "contract[s] containing an arbitration provision." *Tri-City*, 668 S.W.2d at 153.

Even more problematically, *Forest Hills* entirely ignored the plain language of § 435.460 and created an unwarranted judicial exception to an unambiguous statute. The statute's notice requirement is absolute. Section 435.460 requires that all contracts containing an arbitration provision must include the prescribed notice language. The statute provides no exception to compliance. Allowing a broad, judicially-created "actual notice" exception for the inclusion of the required statement undermines the purpose of § 435.460 and is at odds with the statutory language.

We recognize that applying § 435.460 as written may lead to situations in which parties that are actually aware of an arbitration provision evade enforcement by pointing to the absence of the required notice language. That may even be the case here. But that possibility does not permit this Court to change the language of the statute or create exceptions where none exist. To the extent *Forest Hills* suggests that compliance with § 435.460 may be excused upon proof of actual notice to the parties of the arbitration provision, it should no longer be followed.

We also recognize that the prior decisions of this Court "should not be lightly overruled." *D.E.G. v. Juvenile Officer of Jackson Cty.*, 601 S.W.3d 212, 218 (Mo. banc 2020) (quoting *Eighty Hundred Clayton Corp. v. Dir. of Revenue*, 111 S.W.3d 409, 411 n.3 (Mo. banc 2003)). Stare decisis encourages courts to adhere to precedent to promote stability in the law. *D.E.G.*, 601 S.W.3d at 218. Adherence is particularly vital with respect to cases interpreting statutes. *Templemire v. W & M Welding, Inc.*, 433 S.W.3d 371, 387 (Mo. banc 2014) (Fischer, J., dissenting). However, "adherence to precedent is not absolute, and the passage of time and the experience of enforcing a purportedly incorrect precedent may demonstrate a compelling case for changing course." *Templemire*, 433 S.W.3d at 379 (quoting *Med. Shoppe Int'l, Inc. v. Dir. of Revenue*, 156 S.W.3d 333, 335 (Mo. banc 2005)).

It has been nearly forty years since *Forest Hills* was decided and its holding has not been followed by a single subsequent case. The holding in *Forest Hills* is at odds with the clear and unambiguous language of § 435.460. Section 435.460 requires every contract containing a binding arbitration provision to include the prescribed notice statement. *Forest Hills* operates to excuse contracting parties from this legislative requirement. These circumstances present a compelling case to bring the law back in line with the statutory language and to overrule *Forest Hills*.

Finally, McClure cites one other case to support his argument for an "actual notice" exception: *Hamilton Metals, Inc. v. Blue Valley Metal Products Co.*, 763 S.W.2d 225 (Mo. App. W.D. 1988). In that case, the Western District of this Court reviewed the enforceability of an arbitration clause contained in a partnership agreement that did not include the notice statement required by § 435.460. *Id.* at 226. This Court stated that, "[w]here actual notice of the provision for arbitration is shown, the purpose of the statute is fulfilled and compliance . . . is irrelevant." *Id.* at 227. This statement, however, is dictum. Before reaching this issue, the Court first determined

8

that the contract was governed by the Federal Arbitration Act ("FAA") rendering compliance with § 435.460 unnecessary. *Id.* at 226-27. The Court noted that the Supreme Court of Missouri has held that § 435.460 is preempted in all cases subject to the FAA's provisions because it imposes an additional burden on the enforceability of arbitration clauses that is not required by the federal act. *Id.* (citing *Bunge Corp. v. Perryville Feed & Produce, Inc.*, 685 S.W.2d 837, 838-39 (Mo. banc 1985)).[2] Because *Hamilton Metals* first determined that § 435.460 was preempted as applied, its discussion of actual notice is dictum. For the same reasons discussed above regarding *Forest Hills*, the dictum in *Hamilton* is not persuasive and this Court will not follow it.

Applying the clear and unambiguous language of the statute to the facts of this case, the circuit court correctly denied McClure's motion to compel arbitration. Both parties acknowledge that the Asset Purchase Agreement did not contain the language required by § 435.460. In the absence of the mandatory notice language, the arbitration provision was unenforceable and Wind could not be compelled to arbitrate.

## Conclusion

For the foregoing reasons, the circuit court's judgment is affirmed.

_____
John P. Torbitzky, J.

Kurt S. Odenwald, P.J., and
Kelly C. Broniec, J., concur.

---

[2] The parties to this dispute do not argue that the FAA applies.

9