H.T.I. CORPORATION, Appellant,

v.

LIDA MANUFACTURING
COMPANY, Respondent.

No. WD 42231.

Missouri Court of Appeals,
Western District.

March 6, 1990.

Louis J. Leonatti, Ann P. Hagan, Paul A. Seigfreid, Mexico, for appellant.

Thomas J. Downey, Jefferson City, for respondent.

Before KENNEDY, P.J., and
LOWENSTEIN and BERREY, JJ.

BERREY, Judge.

Appeal from the dismissal of appellant's, H.T.I. Corporation's (H.T.I.), application to stay arbitration proceedings.

On appeal, H.T.I. contends that the trial court erred in finding that it did not have jurisdiction to determine the validity of the arbitration provision in question. Appellant also contends that the provision was not binding as it was neither authorized nor ratified by appellant and that the agreement constituted a contract of adhesion. These later two points will not be addressed in this opinion as the jurisdictional question governs the disposition of the case. Affirmed.

H.T.I. is a Missouri corporation engaged in the business of manufacturing clothing. Its manufacturing plant is located in Vandalia, Audrain County, Missouri. Respondent, Lida Manufacturing Company (Lida), is a North Carolina corporation which manufactures and sells textiles to clothing manufacturers. A third company, Tarmak Enterprises, Inc. (Tarmak) is a Nebraska corporation which also is engaged in the business of manufacturing clothing. Tarmak, though not a party to this action, is integral in the events leading up to the controversy in the instant case.

In 1986, Tarmak owned the trademark "LEGGOONS" for the manufacturing and sale of sports clothing. Under a licensing agreement, H.T.I. was authorized to manufacture and sell LEGGOONS sport clothing for children. The fabric for the manufacture of this clothing was purchased from Lida. Under the arrangement between Tarmak and H.T.I., Tarmak ordered all of the fabric. The fabric used by H.T.I. for the manufacturing of children's LEGGOONS was shipped directly to H.T.I., which then made payment directly to Lida or to Lida's factor.

Tarmak began experiencing credit problems. In December, 1986, Daniel E. Jones, an employee of Tarmak traveled to New York and met with Norm Goldberg, a sales representative of Lida. Jones delivered a number of purchase orders to Goldberg, prepared by Jones on pre-printed forms. Two of these forms represented that they were from H.T.I. and one was from Tarmak. In return, Goldberg prepared several pre-printed documents labeled "Contract for Sale of Textile Products." Jones signed these documents. Goldberg sent copies of these documents to both H.T.I. at its Vandalia address, as shown on the contract for sale, and to Daniel Jones. This procedure was followed in subsequent transactions between H.T.I. and Lida.

All of the sales contracts contain the following provision:

2. **ARBITRATION**—Any controversy arising out of this contract shall be settled by arbitration held in the City of New York and pursuant to the rules then obtaining of the General Arbitration Council Division of the American Arbitration Association. The arbitrators shall have the authority to award to a prevailing party the costs of the arbitration including reasonable attorneys fees. The arbitrators have no authority to alter or depart from any provision of this contact and failure to observe this limitation shall constitute grounds for vacating their award. This contract shall be deemed to have been made and shall be governed by the laws of the State of New York. Buyer and Seller consent to the jurisdiction of the Supreme Court of the State of New York for all purposes relating to this contract.

A dispute as to the quality of some of the fabric delivered arose between the parties. Lida issued its demand for arbitration in New York City, New York, claiming the sum of $52,772.48, on June 17, 1988. Appellant responded by filing its Application to Stay Arbitration Proceedings on July 8, 1988, in the Circuit Court of Cole County, Missouri. On June 13, 1989, the circuit court ruled in favor of respondent pursuant to § 435.430, RSMo 1986, stating:

Under that section, jurisdiction is conferred on this court only under agreements providing for arbitration in this state. The arbitration agreement in controversy provides for arbitration in the State of New York. Thus, all questions arising in the matter, including whether or not there is an agreement, are questions for the New York courts and not for the Missouri Courts. Therefore, the Court dismisses this cause.

Appellant contends that the trial court erred in finding that it was without jurisdiction to determine the validity of the arbitration provision in question. The statutory provisions governing arbitration are set forth in Chapter 435, RSMo 1986. Jurisdiction is conferred pursuant to § 435.430, RSMo 1986, which states:

435.430. Court, jurisdiction.—The term "court" means any court of competent jurisdiction of this state. The making of an agreement described in section 435.350 providing for arbitration in this state confers jurisdiction on the court to enforce the agreement under sections 435.350 to 435.470 and to enter judgment on an award thereunder.

The agreement in question provides for arbitration in the "City of New York." It does not provide for arbitration in Missouri. Thus, no jurisdiction is conferred by § 435.430, RSMo 1986. Appellant contends, however, that this does not deprive the Missouri courts of jurisdiction in deciding whether or not an agreement exists in the first place under general principles of contract interpretation. Appellant's contention is in conflict with its actions as it commenced proceedings in the first instance under Chapter 435 where jurisdiction is quite clearly governed by § 435.430, RSMo 1986.

Appellant also relies on *St. Luke's Hospital v. Midwest Mechanical Contractors, Inc.*, 681 S.W.2d 482 (Mo.App.1984). *St. Luke's* concerned proceedings between the hospital and a failed bidder. Unlike the arbitration clause in the instant case however, a foreign jurisdiction was not named as the site of arbitration. Appellant relies upon language in that case used in interpreting § 435.355.2, RSMo 1978, which governs proceedings to stay arbitration proceedings, quoting the court where it states, "It is the legislative authority to a court of proper jurisdiction to entertain an application of one or more parties to stay a threatened or commenced arbitration proceeding." *Id.* at 486–87. There can be no quarrel with the above quoted language. However, it merely begs the question as the court must be one of *proper jurisdic-*

*tion.* In the instant case the trial court was not such a court.

Perhaps a better guideline in interpreting the meaning of jurisdiction under § 435.430 is found in the case of *State ex rel. Tri-City Construction Company v. Marsh,* 668 S.W.2d 148 (Mo.App.1984). In *Tri-City,* the City of Kansas City, Kansas, entered into a contract with Tri-City Construction Company for sewer improvements. The parties entered into an arbitration agreement to settle a dispute. Pursuant to the agreement arbitration proceedings were held in Missouri. A petition to confirm the award was filed in Jackson County, Missouri. The circuit court dismissed the petition claiming that it had not acquired subject matter jurisdiction because the agreement to arbitrate had been made in Kansas. Although *Tri-City* differs from the instant case in that it concerns the confirmation of an awarded entered after the agreed upon arbitration, it discusses the meaning of § 435.430.

The court poses the seminal question: Does the phrase "for arbitration in this state" refer to the making of the agreement so as to limit the jurisdiction of Missouri courts to those agreements made in this state as the trial court found? Or, alternatively, does the language intend to provide for jurisdiction in Missouri whenever the agreement either provides for arbitration to take place within this state or, absent specific agreement, when arbitration is undertaken with the consent of the parties within this state?

*Id.* at 151.

The court found that "[e]very state that has considered the question of jurisdiction to confirm the award has focused on the place of arbitration and not the locus of the contract." *Id.* at 152. Although the issue presented by the instant case is not that of the proper jurisdiction to confirm an award but to decide on the validity of the contract in the first instance, the principle remains the same. Just as jurisdiction to confirm arises out of the jurisdictional mandate of § 435.430, so to does the jurisdiction to decide if the clause is valid.

Section 435.430 confers jurisdiction under §§ 435.350 to 435.470. Specifically, a question as to whether or not there exists an agreement to arbitrate is handled under § 435.355 which states in part:

**435.355. Proceedings to compel or stay arbitration.**—1. On application of a party showing an agreement described in section 435.350, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, *but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised* and shall order arbitration if found for the moving party; otherwise, the application shall be denied.

2. On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. Such an issue, when in substantial and bona fide dispute, *shall be forthwith and summarily tried and the stay ordered if found for the moving party.* If found for the opposing party, the court shall order the parties to proceed to arbitration.

(Emphasis added.)

Obviously, since Missouri is not the state in which arbitration is specified, Missouri is without jurisdiction to proceed. Appellant's Point I is denied. As the jurisdictional issue is decided against appellant, there is no need to address appellant's other points. The judgment of the trial court, dismissing this case, is affirmed.

All concur.